1  Thomas H. Casey – Bar No. 138264
   LAW OFFICE OF THOMAS H. CASEY, INC.
2  A PROFESSIONAL CORPORATION
   22342 Avenida Empresa, Suite 200
3  Rancho Santa Margarita, CA  92688
   Telephone:    (949) 766-8787
4  Facsimile:    (949) 766-9896
   Email:        TomCasey@tomcaseylaw.com

5  Chapter 7 Bankruptcy Trustee

6

7              UNITED STATES BANKRUPTCY COURT

8     CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA DIVISION

9  In re:                          )  Case No. 8:16-bk-11634-SC
                                   )
10 JEFFREY ALLEN WELTON,           )  Chapter 7
                                   )
11              Debtor.            )  **CHAPTER 7 TRUSTEE'S MOTION FOR
                                   )  AN ORDER 1) APPROVING THE
12                                 )  TRUSTEE'S AGREEMENT TO SELL
                                   )  THE ESTATE'S INTEREST IN CERTAIN
13                                 )  PERSONAL PROPERTY PURSUANT TO
                                   )  SECTION 363; 2) APPROVING OVERBID
14                                 )  PROCEDURES**
                                   )
15                                 )  **DECLARATION OF THOMAS H. CASEY
                                   )  IN SUPPORT THEREOF**
16                                 )
                                   )
17                                 )  Hearing Date:
                                   )  Date:   April 5, 2017
18                                 )  Time:   11:00 a.m.
                                   )  Ctrm:   5C
19                                 )
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23 ————————————————————————————————)

24

25

26

27  .

28

                            i

## TABLE OF CONTENTS

Page

Summary ........................................................................................................................ 1

Background Facts............................................................................................................ 1

The Proposed Terms of the Sale Agreement ................................................................. 3

The Requested Overbid Procedures Should be Approved............................................. 4

     2016 Ford Explorer ................................................................................................. 6

     1995 Ford Mustang ................................................................................................. 7

     Firearms .................................................................................................................. 7

     Boat Rental.............................................................................................................. 8

Approving the Instant Motion is in the Best Interests of the Bankruptcy Estate........... 8

Waiver of the Stay is Appropriate ................................................................................. 9

Conclusion ..................................................................................................................... 9

Declaration of Thomas H. Casey .................................................................................. 10

# TABLE OF AUTHORITIES

Page

## Cases

None.

## Statutory Authority

11 U.S.C. Section 363 ............................................................................................ 1, 10

11 U.S.C. Section 541 ............................................................................................ 4, 12

## Other Authorities

Federal Rule of Bankruptcy Procedure 6004(h) ...................................................... 9, 17

TO THE HONORABLE SCOTT CLARKSON, UNITED STATES BANKRUPTCY JUDGE; THE DEBTOR; DEBTOR'S COUNSEL; OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:

Thomas H. Casey, the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jeffrey Allen Welton ("Debtor") respectfully submits the Chapter 7 Trustee's Motion for an Order 1) Approving the Trustee's Agreement to Sell the Estate's Interest in Certain Personal Property Pursuant to Section 363; and 2) Approving Overbid Procedures ("Motion"). In support of this Motion, the Trustee submits the following:

## SUMMARY.

The Trustee seeks Court approval of a proposed purchase and sale agreement ("Agreement") between the Trustee and the Debtor to sell the bankruptcy estate's interest in certain Personal Property (defined below).

This Motion is in the best interests of the estate because the estate will receive a net of $18,885.73, which will benefit the creditors of the estate. The Agreement is also in the best interests of the estate because it minimizes legal fees that the bankruptcy estate would otherwise incur taking possession of the Personal Property and liquidating the Personal Property. The evidence indicates the Personal Property is being sold for fair market value. Accordingly, this Motion should be granted.

## BACKGROUND FACTS.

1.      This bankruptcy case was commenced by the filing of a voluntary Chapter 7 petition on April 15, 2016 ("Petition Date").

2.      Thomas H. Casey is the duly appointed, qualified and acting Chapter 7 Trustee for the bankruptcy estate.

1

3.     On June 27, 2016, the Trustee conducted the Debtor's 341(a) examination and questioned the Debtor about its filed petition and schedules.

4.     Pursuant to the Debtor's amended Schedule B filed on April 29, 2016, the Debtor scheduled a tax refund owed to the Debtor in the amount of $5,000 - $10,000.

5.     Per to the Debtor's recently filed 2015 State Tax Return, the Debtor received a refund in the approximate amount of $6,989 ("Tax Refund"). The Tax Refund has been turned over to the Trustee.

6.     The Debtor's schedule B lists non-exempt cash in two separate bank accounts as follows: Wells Fargo Bank: $50; and E*Trade Checking Account: $2,100, for a total of $2,150 ("Cash"). The Cash in the amount of $2,150 has been turned over to the Trustee.

7.     Pursuant to the Debtor's Schedule B filed on April 29, 2016 and subsequent amendment filed on October 28, 2016 ("Amended Schedule B"), the Debtor lists interests in certain personal property assets as follows:

| Asset | Scheduled Value |
|---|---|
| 2016 Ford Explorer | $36,553.00 |
| 1995 Ford Mustang | $500.00 |
| Firearms | $1,000.00 |
| Clothing | $100.00 |
| Boat Rental for Vacation | $4,540.00 |

The above assets are defined as "Personal Property".

8.     The Debtor's Schedule C indicates the Debtor claimed exemptions in the Personal Property in the total amount of $3,050.00.

2

9.  The Debtor's Schedule D indicates the 2016 Ford Explorer is encumbered by a lien in the amount of $18,658.86.

10. The nonexempt value of the above Personal Property, net of the $18,658.86 encumbrance, is approximately $20,984.14.

11. The Debtor wishes to maintain possession of the Personal Property and the Trustee desires to sell the estate's interest in the Personal Property to the Debtor.

12. The Trustee received and accepted an offer from the Debtor to purchase the bankruptcy estate's interest in the Personal Property in the amount of $18,885.73.

13. The Trustee and Debtor (collectively referred to as "Parties") to agree to the Debtor's purchase of the bankruptcy estate's interest in the Personal Property.

## THE PROPOSED TERMS OF THE SALE AGREEMENT.

14. The Trustee and the Debtor have entered into the Agreement which is attached hereto as **Exhibit "1"** and incorporated herein by this reference. The terms of the Agreement provide, *inter alia*, as follows:

a)  The Trustee will move the Bankruptcy Court for approval of this Agreement.

b)  In exchange for the Bankruptcy Estate's interest in the Personal Property, the Debtor agrees to make a payment by certified funds in the amount of $18,885.73 ("Sale Proceeds"), to the Trustee concurrently with this Agreement ("Offer"). In the event this Agreement is not approved the Trustee shall immediately return the Sale Proceeds to the Debtor.

c)  The Debtor acknowledges that he is purchasing the Bankruptcy Estate's interest in the Personal Property from the Trustee, subject to liens and encumbrances and on an

"AS IS", "WHERE-IS" basis without warranties of any kind, expressed or implied, being given

by the Trustee or his agents, concerning the condition of the property or the quality of the title

thereto, or any other matters relating to the Personal Property

        d)     The Debtor and/or his designees forever waive, for themselves and their

successors and assigns, any and all claims against the Bankruptcy Estate and Thomas H. Casey

in his capacity as Bankruptcy Trustee and/or individually, and his Attorneys, Agents and

Employees, arising or which might otherwise arise in the future concerning the Personal

Property.

        e)     The Debtor shall not claim an exemption of any kind in the Sale

Proceeds, the Cash or the Tax Refund.

        f)     The Sale Proceeds shall be property of the Bankruptcy Estate as defined

in 11 U.S.C. Section 541, and as property of the Bankruptcy Estate it is solely for the benefit of

the Bankruptcy Estate to pay allowed administrative expenses and pre-petition claims.

        g)     Upon the Bankruptcy Court entering an Order approving this Agreement,

the scheduled real property located at 7 Lemon Grove, Irvine, California ("Residence") shall be

deemed abandoned by the Bankruptcy Estate.

        h)     The Trustee's Motion for approval of this Agreement shall include a

request for approval of an overbid procedure for the purchase of the bankruptcy estate's

interest in the Personal Property (see below).

## THE REQUESTED OVERBID PROCEDURES SHOULD BE APPROVED

    15.     In order to obtain the highest and best offer for the benefit of the creditors of the

estate, the Trustee proposes that the foregoing Offer be subject to overbid. Notice is being

provided of the opportunity for overbidding to all interested parties in this matter.

a)     Only Qualified Bidders may submit an overbid.  A "Qualified Bidder" is one who provides a financial statement and such business and banking references as are required in the Trustee's reasonable discretion, sufficient to assure the Trustee of the bidder's ability (based on availability of financing, experience or other conditions) to consummate the purchase of the Personal Property on the same terms and conditions, other than price, as those proposed in the Offer.

b)     No later than three (3) business days prior to the hearing on the Motion for approval of this Agreement, any and all Qualified Bidders must provide evidence that they are qualified to purchase Firearms and have complied with any and all California Firearms laws associated with the purchase of Firearms in the State of California.

c)     Each bid must be received by the Trustee no later than three (3) business days prior to the hearing on the Motion for approval of this Agreement.

d)     The initial overbid must exceed the original Offer by a minimum of Two Thousand U.S. Dollars ($2,000).  For instance, the first bid must be at least Twenty Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($20,885.73).  Each Subsequent bid must then be in increments of at least One Thousand U.S. Dollars ($1,000).  For instance, the first subsequent bid must be at least Twenty-One Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($21,885.73).

e)     Each bid must be all cash, non-contingent, and on the same terms and conditions, other than price, as those proposed in the Offer.

f)     Each bidder must match all terms and conditions of the original bid.  Thus, the payment of the full purchase price must be made.  Said payment must be received by the Trustee by no later than three (3) business days prior to the hearing on the Motion to approve

this Agreement.  Said payment must be in cash, cashier's check, certified check or irrevocable

letter of credit, and must be deposited with the Trustee so that the Trustee will have access to

said funds no later than three (3) business days prior to the hearing on the Motion to approve

this Agreement.

16.    The foregoing procedures will provide for an orderly completion of the sale of

the Personal Property by permitting all bidders to compete on similar terms, and will allow

interested parties and the Court to compare competing bids in order to realize the highest

benefit for the estate.

17.    The Trustee is in receipt of the funds in connection with the Offer in the amount

of $18,885.73.

## THE PROPOSED SALE IS FOR FAIR MARKET VALUE

18.    Fair market value for the Personal Property is being realized.  The Trustee has

completed his due diligence and investigated the value of the Personal Property and submits the

following:

**2016 Ford Explorer**

19.    The Trustee conducted his own independent investigation and internet research

on the value of the 2016 Ford Explorer.  Pursuant to Kelley Blue Book ("KBB"), the value of

the 2016 Ford Explorer is approximately $32,492. Pursuant to NADA Guides ("NADA"), the

value of the 2016 Ford Explorer is approximately $30,162. A copy of the KBB and NADA

values are attached hereto as **Exhibit "2"** and incorporated herein by this reference.

20.    The Debtor has advised the Trustee that the 2016 Ford Explorer is currently

stored at the Residence. The Trustee has also been provided documentation that the 2016 Ford

6

Explorer is currently insured through 21st Century Insurance Company through and including May 26, 2017.

**1995 Ford Mustang**

21.    The Trustee conducted his own independent investigation and internet research on the value of the 1995 Ford Mustang. Pursuant to KBB, the value of the 1995 Ford Mustang averages $627.00. A copy of the KBB value is attached hereto as **Exhibit "3"** and incorporated herein by this reference.

22.    The Trustee has been informed that the 1995 Ford Mustang is not currently in operating condition and has been registered with the Department of Motor Vehicles as "non-operational" for the last five (5) years. The Debtor has advised the Trustee that the 1995 Ford Mustang is currently stored at the Residence.

**Firearms**

23.    The Trustee has obtained additional information on the firearms listed on the Debtor's schedule B with a value of $1,000. The breakdown of the firearms and the purchase information is as follows:

a)    Sig Sauer P220 (4" semi auto handgun, 45 cal), 2004, $600

b)    Para Ordnance Carry LDA (3" semi auto handgun, 45 cal), 2006, $650

c)    Springfield XDS (3" semi auto handgun, 45 cal), 2014, bought used $450

d)    Ruger LCR (2" revolver, 357 mag), 2011, bought used $300

e)    Benelli Nova (Pump action shotgun, 12 ga), $400

f)    Benelli M4 (Semi auto shotgun, 12 ga), $1600

g)    Savage Arms 10FCP-K (bolt action rifle, 308 cal), 2012, $850

h)    Spike's Tactical AR-15 lower receiver, $150

The above assets are defined as "Firearms".

24.    The purchase price of the Firearms throughout the years totals approximately $5,000. The Debtor has indicated to the Trustee that he does not have much, if any, of the paperwork associated with the purchases of the Firearms.

25.    The Trustee has not taken possession of the Firearms. The Firearms are currently registered to the Debtor and the Debtor maintains possession of the Firearms.

26.    The Trustee is informed and believes that if he were to take possession of the Firearms, the cost to employ and compensate an auctioneer to liquidate the Firearms, in addition to the cost to file a turnover motion, would exceed any potential benefit to the estate.

**Boat Rental**

27.    The Trustee has obtained additional information on the Vacation Boat Rental listed on the Debtor's schedule B with a value of $4,540. Pursuant to information provided by the Debtor, the Debtor agreed to split the costs of renting a boat with another couple in the British Virgin Islands for seven (7) days.

28.    The Debtor made payments prior to the Petition Date to Moorings Power Charters for the Vacation Boat Rental in the amount of $4,540.

29.    The Debtor has indicated that it is highly unlikely that the Vacation Boat Rental is marketable or resalable as the payments made towards the Vacation Boat Rental are non-transferable and nonrefundable.

## APPROVING THE INSTANT MOTION IS IN THE BEST INTERESTS OF THE BANKRUPTCY ESTATE

30.    By the Agreement, the Trustee will receive approximately $18,885.73 into the estate which can be distributed to creditors.  It is unlikely that the Trustee would be able to

locate another potential buyer to purchase the Personal Property. Under the circumstances, the

Trustee's proposed Agreement with the Debtor should be approved.

## WAIVER OF THE STAY IS APPROPRIATE.

31.    The waiver of the stay imposed by Rule 6004(h) is appropriate.  Time is of the

essence on the Agreement because the Debtor can immediately complete the sale.

Accordingly, the Trustee requests that the Court waive the stay imposed by Rule 6004(h).

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Trustee requests that the Court enter an

order:

(a) Granting the Trustee's Motion;

(b) Approving the Agreement;

(c) Authorizing the Trustee to execute the Agreement;

(d) For such other and further relief the Court deems appropriate.


Respectfully submitted,

LAW OFFICE OF THOMAS H. CASEY, INC.,
A Professional Corporation

Dated: March 9, 2017          By: _____
                                   Thomas H. Casey, Chapter 7 Trustee for the
                                   Bankruptcy Estate of Jeffrey Allen Welton

9

### DECLARATION OF THOMAS H. CASEY

I, Thomas H. Casey, declare as follows:

1.    I am the duly appointed, qualified and acting Chapter 7 Trustee for the bankruptcy estate of Jeffrey Allen Welton. The facts contained herein are based upon information which I have acquired in my capacity as Trustee and upon my review of the pleadings, records and files in this matter, and are true and correct to the best of my knowledge, information and belief.

2.    I make this Declaration support of my Motion for Order 1) Approving the Agreement to Sell the Estate's Interest in Certain Personal Property Pursuant to Section 363; and 2) Approving Overbid Procedures ("Motion").

3.    This bankruptcy case was commenced by the filing of a voluntary Chapter 7 petition on April 15, 2016 ("Petition Date").

4.    I am the duly appointed, qualified and acting Chapter 7 Trustee for the bankruptcy estate.

5.    On June 27, 2016, I conducted the Debtor's 341(a) examination and questioned the Debtor about his filed petition and schedules.

6.    Pursuant to the Debtor's amended Schedule B filed on April 29, 2016, the Debtor scheduled a tax refund owed to the Debtor in the amount of $5,000 - $10,000.

7.    Per to the Debtor's recently filed 2015 State Tax Return, the Debtor received a refund in the approximate amount of $6,989 ("Tax Refund"). The Tax Refund has been turned over to me.

8.    The Debtor's schedule B lists non-exempt cash in two separate bank accounts as follows: Wells Fargo Bank: $50; and E*Trade Checking Account: $2,100, for a total of $2,150 ("Cash"). The Cash in the amount of $2,150 has been turned over to me.

9.    Pursuant to the Debtor's Schedule B filed on April 29, 2016 and subsequent amendment filed on October 28, 2016 ("Amended Schedule B"), the Debtor lists interests in certain personal property assets as follows:

| Asset | Scheduled Value |
|---|---|
| 2016 Ford Explorer | $36,553.00 |
| 1995 Ford Mustang | $500.00 |
| Firearms | $1,000.00 |
| Clothing | $100.00 |
| Boat Rental for Vacation | $4,540.00 |

The above assets are defined as "Personal Property".

10.    The Debtor's Schedule C indicates the Debtor claimed exemptions in the Personal Property in the total amount of $3,050.00.

11.    The Debtor's Schedule D indicates the 2016 Ford Explorer is encumbered by a lien in the amount of $18,658.86.

12.    The nonexempt value of the above Personal Property, net of the $18,658.86 encumbrance, is approximately $20,984.14.

13.    The Debtor wishes to maintain possession of the Personal Property and the Trustee desires to sell the estate's interest in the Personal Property to the Debtor.

14.    I received and accepted an offer from the Debtor to purchase the bankruptcy estate's interest in the Personal Property in the amount of $18,885.73.

15.    The Debtor and I (collectively referred to as "Parties") to agree to the Debtor's purchase of the bankruptcy estate's interest in the Personal Property.

16.    The Debtor and I have entered into the Agreement which is attached hereto as **Exhibit "1"** and incorporated herein by this reference.  The terms of the Agreement provide, *inter alia*, as follows:

a)    I will move the Bankruptcy Court for approval of this Agreement.

b)    In exchange for the Bankruptcy Estate's interest in the Personal Property, the Debtor agrees to make a payment by certified funds in the amount of $18,885.73 ("Sale Proceeds"), to me concurrently with this Agreement ("Offer"). In the event this Agreement is not approved, I shall immediately return the Sale Proceeds to the Debtor.

c)    The Debtor acknowledges that he is purchasing the Bankruptcy Estate's interest in the Personal Property from me, subject to liens and encumbrances and on an "AS IS", "WHERE-IS" basis without warranties of any kind, expressed or implied, being given by me or my agents, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Personal Property

d)    The Debtor and/or his designees forever waive, for themselves and their successors and assigns, any and all claims against the Bankruptcy Estate and myself in my capacity as Bankruptcy Trustee and/or individually, and my Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Personal Property.

e)    The Debtor shall not claim an exemption of any kind in the Sale Proceeds, the Cash or the Tax Refund.

f)    The Sale Proceeds shall be property of the Bankruptcy Estate as defined in 11 U.S.C. Section 541, and as property of the Bankruptcy Estate it is solely for the benefit of the Bankruptcy Estate to pay allowed administrative expenses and pre-petition claims.

g)      Upon the Bankruptcy Court entering an Order approving this Agreement, the scheduled real property located at 7 Lemon Grove, Irvine, California ("Residence") shall be deemed abandoned by the Bankruptcy Estate.

h)      The Motion for approval of this Agreement shall include a request for approval of an overbid procedure for the purchase of the bankruptcy estate's interest in the Personal Property (see below).

17.     In order to obtain the highest and best offer for the benefit of the creditors of the estate, I propose that the foregoing Offer be subject to overbid. Notice is being provided of the opportunity for overbidding to all interested parties in this matter.

a)      Only Qualified Bidders may submit an overbid. A "Qualified Bidder" is one who provides a financial statement and such business and banking references as are required in my reasonable discretion, sufficient to assure me of the bidder's ability (based on availability of financing, experience or other conditions) to consummate the purchase of the Personal Property on the same terms and conditions, other than price, as those proposed in the Offer.

b)      No later than three (3) business days prior to the hearing on the Motion for approval of this Agreement, any and all Qualified Bidders must provide evidence that they are qualified to purchase Firearms and have complied with any and all California Firearms laws associated with the purchase of Firearms in the State of California.

c)      Each bid must be received by me no later than three (3) business days prior to the hearing on the Motion for approval of this Agreement.

d)      The initial overbid must exceed the original Offer by a minimum of Two Thousand U.S. Dollars ($2,000). For instance, the first bid must be at least Twenty Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($20,885.73). Each Subsequent bid must

then be in increments of at least One Thousand U.S. Dollars ($1,000). For instance, the first subsequent bid must be at least Twenty-One Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($21,885.73).

e)    Each bid must be all cash, non-contingent, and on the same terms and conditions, other than price, as those proposed in the Offer.

f)    Each bidder must match all terms and conditions of the original bid. Thus, the payment of the full purchase price must be made. Said payment must be received by me by no later than three (3) business days prior to the hearing on the Motion to approve this Agreement. Said payment must be in cash, cashier's check, certified check or irrevocable letter of credit, and must be deposited with me so that I will have access to said funds no later than three (3) business days prior to the hearing on the Motion to approve this Agreement.

18.    The foregoing procedures will provide for an orderly completion of the sale of the Personal Property by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the estate.

19.    I am in receipt of the funds in connection with the Offer in the amount of $18,885.73.

20.    Fair market value for the Personal Property is being realized. I have completed my due diligence and investigated the value of the Personal Property and submits the following:

**2016 Ford Explorer**

21.    I conducted my own independent investigation and internet research on the value of the 2016 Ford Explorer. Pursuant to Kelley Blue Book ("KBB"), the value of the

14

2016 Ford Explorer is approximately $32,492. Pursuant to NADA Guides ("NADA"), the

value of the 2016 Ford Explorer is approximately $30,162. A copy of the KBB and NADA

values are attached hereto as **Exhibit "2"** and incorporated herein by this reference.

22.     The Debtor has advised me that the 2016 Ford Explorer is currently stored at the

Residence. I have also been provided documentation that the 2016 Ford Explorer is currently

insured through 21st Century Insurance Company through and including May 26, 2017.

**1995 Ford Mustang**

23.     I conducted my own independent investigation and internet research on the

value of the 1995 Ford Mustang. Pursuant to KBB, the value of the 1995 Ford Mustang

averages $627.00. A copy of the KBB value is attached hereto as **Exhibit "3"** and incorporated

herein by this reference.

24.     I have been informed that the 1995 Ford Mustang is not currently in operating

condition and has been registered with the Department of Motor Vehicles as "non-operational"

for the last five (5) years. The Debtor has advised me that the 1995 Ford Mustang is currently

stored at the Residence.

**Firearms**

25.     I have obtained additional information on the firearms listed on the Debtor's

schedule B with a value of $1,000. The breakdown of the firearms and the purchase

information is as follows:

    a)  Sig Sauer P220 (4" semi auto handgun, 45 cal), 2004, $600

    b)  Para Ordnance Carry LDA (3" semi auto handgun, 45 cal), 2006, $650

    c)  Springfield XDS (3" semi auto handgun, 45 cal), 2014, bought used
        $450

    d)  Ruger LCR (2" revolver, 357 mag), 2011, bought used $300

e) Benelli Nova (Pump action shotgun, 12 ga), $400

f) Benelli M4 (Semi auto shotgun, 12 ga), $1600

g) Savage Arms 10FCP-K (bolt action rifle, 308 cal), 2012, $850

h) Spike's Tactical AR-15 lower receiver, $150

The above assets are defined as "Firearms".

26.　　The purchase price of the Firearms throughout the years totals approximately $5,000. The Debtor has indicated to me that he does not have much, if any, of the paperwork associated with the purchases of the Firearms.

27.　　I have not taken possession of the Firearms. I am informed and believe the Firearms are currently registered to the Debtor and the Debtor maintains possession of the Firearms.

28.　　I am informed and believe that if I were to take possession of the Firearms, the cost to employ and compensate an auctioneer to liquidate the Firearms, in addition to the cost to file a turnover motion, would exceed any potential benefit to the estate.

**Boat Rental**

29.　　I have obtained additional information on the Vacation Boat Rental listed on the Debtor's schedule B with a value of $4,540. Pursuant to information provided by the Debtor, the Debtor agreed to split the costs of renting a boat with another couple in the British Virgin Islands for seven (7) days.

30.　　The Debtor made payments prior to the Petition Date to Moorings Power Charters for the Vacation Boat Rental in the amount of $4,540.

31.     The Debtor has indicated that it is highly unlikely that the Vacation Boat Rental is marketable or resalable as the payments made towards the Vacation Boat Rental are non-transferable and nonrefundable.

32.     By the Agreement, I will receive approximately $18,885.73 into the estate which can be distributed to creditors.  It is unlikely that I would be able to locate another potential buyer to purchase the Personal Property. Under the circumstances, the proposed Agreement with the Debtor should be approved.

33.     The waiver of the stay imposed by Rule 6004(h) is appropriate.  Time is of the essence on the Agreement because the Debtor can immediately complete the sale. Accordingly, I request that the Court waive the stay imposed by Rule 6004(h).

34.     The Agreement will therefore provide a benefit to the bankruptcy estate and the Motion should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on March _____, 2017, at Rancho Santa Margarita, California.

Thomas H. Casey, Declarant

17

# Exhibit 1

## SALE AGREEMENT

This Sale Agreement (the "Agreement") is entered into by and between Jeffrey Allen Welton ("Debtor") and Thomas H. Casey, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Jeffrey Allen Welton. The bankruptcy estate of Jeffrey Allen Welton is hereinafter referred to as the ("Bankruptcy Estate"). The Trustee and Debtor will be together referred to as the "Parties". This Agreement is entered into based upon the following facts:

WHEREAS, this bankruptcy case was commenced by the filing of a voluntary Chapter 7 petition on April 15, 2016 ("Petition Date").

WHEREAS, Thomas H. Casey is the duly appointed, qualified and acting Chapter 7 Trustee for the Bankruptcy Estate.

WHEREAS, the Trustee is charged with the obligation of administering the affairs of the Debtors, and has investigated the Debtor's financial affairs in order to administer assets of the estate.

WHEREAS, on June 27, 2016, the Trustee conducted the Debtor's 341(a) examination at which time the Trustee questioned the Debtor about his filed petition and schedules.

WHEREAS, the Debtor's schedules B, C and D are attached collectively as **Exhibit "A"**.

WHEREAS, pursuant to the Debtor's Schedule B filed on April 29, 2016, the Debtor scheduled a tax refund owed to the Debtor in the amount of $5,000 - $10,000.

WHEREAS, the Debtor indicated that pursuant to the Debtor's recently filed 2015 State Tax Return, the Debtor was expected to receive a refund in the approximate amount of $6,989 ("Tax Refund"). The Tax Refund has been turned over to the Trustee.

WHEREAS, the Debtor's schedule B lists non-exempt cash in two separate bank accounts as follows: Wells Fargo Bank: $50; and E*Trade Checking Account: $2,100, for a total of $2,150 ("Cash"). The Cash in the amount of $2,150, has been turned over to the Trustee.

EXHIBIT 1  PAGE 18

**WHEREAS**, pursuant to the Debtor's Schedule B filed on April 29, 2016 and subsequent amendment filed on October 28, 2016 ("Amended Schedule B"), the Debtor lists interests in certain personal property assets as follows:

| Asset | Scheduled Value |
|---|---|
| 2016 Ford Explorer | $36,553.00 |
| 1995 Ford Mustang | $500.00 |
| Firearms | $1,000.00 |
| Clothing | $100.00 |
| Boat Rental for Vacation | $4,540.00 |

The above assets are defined as "Personal Property".

**WHEREAS**, the Debtor's Amended Schedule B is attached hereto as **Exhibit "B"**.

**WHEREAS**, the Debtor's Schedule C indicates the Debtor claimed exemptions in the Personal Property in the total amount of $3,050.00.

**WHEREAS**, the Debtor's Schedule D indicates the 2016 Ford Explorer is encumbered by a lien in the amount of $18,658.86.

**WHEREAS**, the nonexempt value of the above Personal Property, net of the $18,658.86 encumbrance, is approximately $20,984.14.

**WHEREAS**, the Debtor wishes to maintain possession of the Personal Property and the Trustee desires to sell the estate's interest in the Personal Property to the Debtor.

**WHEREAS**, the Trustee has the duty to liquidate the assets of the Bankruptcy Estate which includes the Bankruptcy Estate's interest in the Personal Property.

**WHEREAS**, the Trustee desires to avoid the delay and expense of administering the Personal Property and the Debtor wishes to retain the Personal Property.

EXHIBIT 1  PAGE 19

**WHEREAS**, the Parties desire to settle and resolve any and all disputes, actions, causes of action, demands, damages and claims.

**WHEREFORE**, in consideration of the promises, the mutual obligations and undertakings set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the Parties agree, as follows:

1.    The Trustee will move the Bankruptcy Court for approval of this Agreement.

2.    In exchange for the Bankruptcy Estate's interest in the Personal Property, the Debtor agrees to make a payment by certified funds in the amount of $18,885.73 ("Sale Proceeds"), to the Trustee concurrently with this Agreement ("Offer"). In the event this Agreement is not approved, the Trustee shall immediately return the Sale Proceeds to the Debtor.

3.    The Debtor acknowledges that he is purchasing the Bankruptcy Estate's interest in the Personal Property from the Trustee, subject to liens and encumbrances and on an "AS IS", "WHERE IS" basis without warranties of any kind, expressed or implied, being given by the Trustee or his agents, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Personal Property.

4.    The Debtor and/or his designees forever waive, for themselves and their successors and assigns, any and all claims against the Bankruptcy Estate and Thomas H. Casey in his capacity as Bankruptcy Trustee and/or individually, and his Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Personal Property.

5.    The Debtor shall not claim an exemption of any kind in the Sale Proceeds, the Cash or the Tax Refund.

EXHIBIT 1   PAGE 20

6.    The Sale Proceeds shall be property of the Bankruptcy Estate as defined in 11 U.S.C. Section 541, and as property of the Bankruptcy Estate it is solely for the benefit of the Bankruptcy Estate to pay allowed administrative expenses and pre-petition claims.

7.    The Trustee's Motion for approval of this Agreement shall include a request for approval of an overbid procedure for the purchase of the bankruptcy estate's interest in the Personal Property as follows:

    a.  Only Qualified Bidders may submit an overbid. A "Qualified Bidder" is one who provides a financial statement and such business and banking references as are required in the Trustee's reasonable discretion, sufficient to assure the Trustee of the bidder's ability (based on availability of financing, experience or other conditions) to consummate the purchase of the Personal Property on the same terms and conditions, other than price, as those proposed in the Offer.

    b.  Each bid must be received by the Trustee no later than three (3) business days prior to the hearing on the Motion for approval of this Agreement.

    c.  The initial overbid must exceed the original Offer by a minimum of Two Thousand U.S. Dollars ($2,000). For instance, the first bid must be at least Twenty Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($20,885.73). Each Subsequent bid must then be in increments of at least One Thousand U.S. Dollars ($1,000). For instance, the first subsequent bid must be at least Twenty-One Thousand Eight Hundred Eighty-Five U.S. Dollars and 73/100 ($21,885.73).

    d.  Each bid must be all cash, non-contingent, and on the same terms and conditions, other than price, as those proposed in the Offer.

EXHIBIT 1   PAGE 21

8.    Each bidder must match all terms and conditions of the original bid. Thus, the payment of the full purchase price must be made. Said payment must be received by the Trustee by no later than three (3) business days prior to the hearing on the Motion to approve this Agreement. Said payment must be in cash, cashier's check, certified check or irrevocable letter of credit, and must be deposited with the Trustee so that the Trustee will have access to said funds no later than three (3) business days prior to the hearing on the Motion to approve this Agreement.

9.    Upon the Bankruptcy Court entering an Order approving this Agreement, the scheduled real property located at 7 Lemon Grove, Irvine, California shall be deemed abandoned by the Bankruptcy Estate.

10.    The Parties, each individually and combined, further agree to be bound by the following terms and conditions:

A.    Recital of Facts. Each and every recital of fact set forth above is incorporated herein by this reference as though fully set forth. These recitals are an integral part of this Agreement and are hereby agreed to by the Parties to be true for purposes of this Agreement.

B.    Authority to Execute Agreement. All Parties covenant and warrant they have full rights and authority to execute this Agreement and bind such entity to the terms and conditions set forth herein.

C.    Trustee Capacity. Thomas H. Casey is signing this Agreement in his capacity solely as the Chapter 7 Trustee of the bankruptcy estate of Jeffrey Allen Welton. Nothing contained herein shall in any way impute liability to Thomas H. Casey personally or anyone acting on his behalf, including but not limited to the Law Office of Thomas H. Casey, Inc.

EXHIBIT 1  PAGE 22

D.    <u>Consultation with Counsel</u>. The Parties hereto acknowledge and represent that they have been given adequate opportunity to have consulted with legal counsel before entering into this settlement and executing this Agreement.

E.    <u>Reliance</u>. The Parties, and each of them, understand the meaning of this Agreement and expressly consent that this Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to the release of unknown and unsuspected claims, demands, and causes of action. The Parties acknowledge that they have relied solely upon their own judgment, belief and knowledge of the existence, nature and extent of each claim, demand, or cause of action that each party may have against the other, and that each such Party has not been influenced to any extent in entering into this Agreement by any representation or statement regarding any such claim, demand or cause of action made by any other Party hereto. The Parties hereto have made such investigation of the facts pertaining to the releases contained herein as they deem necessary.  The terms of this Agreement are contractual and are the result of negotiation among the Parties; in interpreting this Agreement, no rule of construction shall be applied whereby an ambiguity is construed against the Party who drafted the Agreement.  This Agreement has been carefully read by each of the Parties and the contents thereof are known and understood by each of the Parties.  This Agreement is signed freely by each Party executing it.

F.    <u>Execution of Additional Documents</u>.  The Parties agree that they will execute any and all additional documents and take all additional steps which may be necessary or convenient to consummate this settlement and accomplish the purposes thereof.

G.    <u>Covenant Re: Assignment</u>. The Parties hereto represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim and other matter which each purports to release herein, and that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, association, corporation or other

EXHIBIT 1  PAGE 23

entity, any right, title or interest in any such claim or other matter, and that they have not instituted any proceedings against any party released herein. In the event that such representation is false, and any such claim or matter is asserted against any Party hereto (and/or the successor of such party) by any party or entity who is the assignee or transferee of such claim or matter, then the party hereto who assigned or transferred such claim or matter shall fully indemnify, protect, defend and hold harmless the party against whom such claim or matter is asserted (and its "Representatives") from and against such claim or matter and from all actual costs, attorneys' fees, expenses, liabilities and damages which that party and/or its Representatives incurs as a result of the assertion of such claim or matter.

H.     Survival of Warranties.   The representations and warranties contained in this Agreement are deemed to and do survive the execution hereof.

I.     Modifications.   This Agreement may not be amended, canceled, revoked or otherwise modified except by written agreement subscribed by all the Parties to be charged with such modification.

J.     Binding.  This Agreement shall be binding on the Parties hereto when each such Party has executed at least one counterpart, subject only to the approval of the United States Bankruptcy Court.

K.     Appropriate Notice.  Trustee shall cause appropriate notice of this Agreement to be given to the parties entitled to such notice under the United States Bankruptcy Code and Rules and pursuant to any applicable Bankruptcy Court Order.

L.     Final Order.  This Agreement shall become final upon entry of an order of the United States Bankruptcy Court authorizing the Trustee to enter into it and approving the terms set forth herein. Absent entry of a final order of the United States Bankruptcy Court approving

EXHIBIT 1  PAGE 24

this Agreement, this Agreement shall be null and void and the Trustee shall return the Sale Proceeds to the Debtor.

M.    Agreement Binding on Successors.  This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective Representatives or Successors.

N.    No Admission of Liability.  The Parties hereto acknowledge that this Agreement represents a settlement of disputed claims, and that by entering into this Agreement no Party admits or acknowledges the existence of any liability or wrongdoing.  In fact, each of the Parties to this Agreement specifically denies any wrongdoing and liability.  Nothing in this Agreement shall be construed or asserted as an admission of any fact or liability against any Party for any purpose.

O.    Attorneys' Fees and Costs.  In the event that any action, suit or other proceeding is hereafter instituted to remedy, prevent or obtain relief from a breach of this Agreement, arising out of a breach of this Agreement, involving claims within the scope of the releases contained in this Agreement, or pertaining to a declaration of rights under this Agreement, the prevailing party shall recover all of such Party's reasonable attorneys' fees and costs incurred in each and every such action, suit or other proceedings, including any and all appeals, writs or petitions therefrom.

P.    Jurisdiction of the Bankruptcy Court.  Should any dispute arise which involves the Bankruptcy Estate regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Santa Ana Division shall have the exclusive jurisdiction to determine the same.

Q.    Severability.  In the event any provision of this Agreement shall be held to be void, voidable, or unenforceable, the remaining provisions shall remain in full force and effect.

R.    Governing Law. Notwithstanding anything to the contrary in any prior agreement or contract, this Agreement and all prior contracts or agreements between the Parties or any separate entity or entities of a Party on the one side and any separate entity or entities of a Party

EXHIBIT 1  PAGE 25

on the other side shall be governed by, interpreted and construed according the laws of the State of California without regard to conflict of law principles.

S.    Counterparts.  This Agreement may be executed in one or more counterparts and by facsimile transmission, each of which when executed and delivered shall be deemed to be an original, and all of which when executed shall constitute one and the same instrument.

T.    Headings.  Headings in this Agreement are for convenience or reference only and shall not limit or otherwise affect the meaning hereof.

U.    Integration.  This Agreement constitutes the entire agreement between the Parties who have executed it and supersedes any and all other agreements, understandings, negotiations or discussions, either oral or in writing, express or implied, between the Parties to this Agreement. The Parties to this Agreement each acknowledge that no representations, inducements, promises, agreements or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement or warranty and that no representation, inducement, promise, agreement or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers or terminations of this Agreement shall be valid or binding, unless executed in writing by all of the Parties to this Agreement.  This Agreement is intended to be final and binding upon the Parties and is further intended to be effective as a full and final accord and satisfaction among them regardless of any claims of mistake of fact or law, duress, or any other circumstances whatsoever. Each Party relies upon the finality of this Agreement as a material factor inducing that party's execution of this Agreement. Each Party agrees that from the date of this Agreement, any and all rights and/or liabilities arising between or among the respective parties and each of them with respect to the matters herein released shall arise solely out of the terms, provisions, representations and

EXHIBIT 1  PAGE 26

warranties contained in this Agreement. There are no agreements or understandings between the Parties hereto relating to the matters and releases referred to in this Agreement, other than those set forth herein.

V.    No Waiver. Failure to insist on compliance with any term, covenant or condition contained in this Agreement shall not be deemed a waiver of that term, covenant or condition, nor shall any waiver or relinquishment of any right or power contained in this Agreement at any one time or more times be deemed a waiver or relinquishment of any right or power at any other time or times.

W.    Effective Date. This Agreement shall become effective immediately upon the date when the last signature is placed thereon by duly authorized representatives of the Parties hereto and such date shall be known as the "Effective Date" and/or "Date of Execution" of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have freely and voluntarily executed this Agreement on the dates set forth below:

DATED: ~~January~~ FEBRUARY  8 , 2017

 

Jeffrey Allen Welton, Debtor

 

DATED: ~~January~~ March  9 , 2017

 

Thomas H. Casey
Chapter 7 Trustee for the bankruptcy estate of
Jeffrey Allen Welton

APPROVED AS TO FORM AND CONTENT:

 

Vanessa Haberbush, Esq.
Attorney for Jeffrey Allen Welton, Debtor

EXHIBIT 1  PAGE 27

**Exhibit 2**





**Exhibit 3**



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**22342 Avenida Empresa, Suite 200, Rancho Santa Margarita, CA 92688**

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Motion for an Order: (1) Approving the Trustee's Agreement to Sell the Estate's Interest in Certain Personal Property Pursuant to Section 363; (2) Approving Overbid Procedures; Declaration of Thomas H. Casey in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 9, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Scott R Albrecht    scott.albrecht@sgsattorneys.com, jackie.nguyen@sgsattorneys.com
- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Vanessa M Haberbush    vhaberbush@lbinsolvency.com,
  dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant
  @gmail.com,mblake@lbinsolvency.com
- Marshaun Logan-Larry    mlogan-larry@kinecta.org
- Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **March 9, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 9, 2017 | Kathy Driggers | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SERVED BY US MAIL:**

**Interested Party**
United States Bankruptcy Court
Attn: Hon. Scott C. Clarkson
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

**Debtor**
Jeffrey Allen Welton
7 Lemon Grove
Irvine, CA 92618-4502

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                        **F 9013-3.1.PROOF.SERVICE**